UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMPLOYEE #1,

    Plaintiff,

    v.

THE DEPARTMENT OF BEHAVIORAL
HEALTH, *et al.*,

    Defendants.

Civil Action No. 23-2553 (JEB)

**MEMORANDUM OPINION AND ORDER**

    In a tragic incident on March 9, 2022, a patient at St. Elizabeths Hospital in Southeast D.C., the District's public psychiatric facility, was brutally murdered. See ECF No. 2 (Am. Compl.), ¶¶ 64–188, at 19–33. A fellow patient was subsequently arrested and charged. See ECF No. 4 (Mot.) at 2, 4. In the months that followed, St. Elizabeths conducted an internal investigation, and Disability Rights DC (a protection and advocacy program for people with disabilities) conducted its own investigation to determine whether hospital staff followed appropriate safety procedures. See Am. Compl., ¶¶ 4–5, at 53; ECF No. 2-14 (DRDC Report). In a public report entitled "Murder and Missed Opportunities to Save a Life at St. Elizabeths Hospital," Disability Rights DC found that "all staff persons who were working that night on the unit grossly neglected their duties and failed to follow many Hospital policies." DRDC Report at 1, 3. In particular, the report described the actions of a "charge nurse" on duty that night who was "looking at a computer" during the killing. Id. at 4–5; see Am. Compl., ¶ 130, at 75–76.

    Plaintiff Employee #1 is that charge nurse. He explains that as a St. Elizabeths staff member, he cared for both the murder victim and suspect and witnessed (and tried to stop) the

murder. See Mot. at 2–4. In this lawsuit against the District's Department of Behavioral Health, St. Elizabeths, Disability Rights DC, University Legal Services, Inc., and a number of individuals associated with those entities, Employee #1 alleges that following the murder, Defendants discriminated against him on the basis of protected characteristics, see Am. Compl., ¶¶ 1–47, at 51–61; intentionally and negligently caused him emotional distress, id., ¶¶ 78–112, 151–55, at 65–71, 81; conspired to defame him, id., ¶¶ 113–36, at 71–78; breached their promise to support his treatment and rehabilitation, id., ¶¶ 137–44, at 78–79; and denied him benefits to which he was entitled. Id., ¶¶ 145–50, at 79–81. The thrust of Plaintiff's claim is that Defendants wrongly blamed him for letting the murder happen.

To avoid "[t]he stain of association" with a murder and because he fears "harm" and "retaliation" from the alleged killer (whose criminal case is pending in Superior Court), Plaintiff has filed a *pro se* Motion to Proceed Under Pseudonym. See Mot. at 10, 12. The Court will grant the Motion, subject to any further consideration by the United States District Judge to whom this case is randomly assigned. See LCvR 40.7(f) (providing that Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint"); id. 5.1(h)(1) ("Absent statutory authority, no case or document may be sealed without an order from the Court.").

**I.      Legal Standard**

Generally, a complaint must identify the plaintiffs. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sent'g Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed

pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

**II.     Analysis**

At this early stage, Plaintiff has met his burden to show that his privacy and safety interests outweigh the public's presumptive and substantial interest in learning his identity.

First, as the Complaint makes clear, Plaintiff does not seek to proceed under a pseudonym "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature."  Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original).  The Complaint reveals "intimate or sensitive personal information" about Plaintiff of the kind "traditionally recognized under this factor, such as sexual activities, reproductive rights, bodily autonomy, [and] medical concerns."  Doe v. Rogers, 2023 WL 1470007, at *2 (D.D.C. Feb. 2, 2023) (quoting Doe v.

3

Bogan, 542 F. Supp. 3d 19, 23 (D.D.C. 2021)).  Specifically, it describes in detail how Employee #1 reacted physically to witnessing the murder, including with respect to his perspiration, urination, and bowel movements.  See Am. Compl., ¶¶ 89, 91, at 22.  It also explains the injuries that he suffered as a result of the traumatic incident, including "changes in bowel habit [sic] for months," "[a] significant weight loss of more than 40lbs, with sunken eye balls [sic], cheeks and exposed bone images all over," and "[d]iarrhea."  Am. Compl., ¶¶ 9–10, 15, at 82; see also ECF No. 4-1 (Aff.) at 2.

An additional reason to proceed pseudonymously, Plaintiff argues, is to avoid the risk of being associated with "a patient homicide inside a secure forensic unit at a public psychiatric hospital," "an association which, if unwarranted, has far [more] [wide-]reaching and damaging impacts than the annoyances of a civil litigation."  Mot. at 4, 6; see id. at 8–9 (contending that Defendants' version of events falsely implies that "Plaintiff tuned out on the job while a patient in his care was being killed," which "creates antipathy even in those who do not know Plaintiff"); id. at 10 ("The stain of association with a criminal activity is of a different type from the annoyance of a civil litigation."); see also Aff. at 3–4 (attesting that "[r]evelation of Plaintiff's name and home address will tie Plaintiff to articles about the patient murder at [St. Elizabeths]" and "fuel suspicions and speculations of wrong doing [sic]").  Although these associations do not implicate him as being criminally culpable, cf. Doe v. Benoit, 2019 WL 13079193, at *4 (D.D.C. Apr. 30, 2019) (finding risk of being "unfairly brand[ed] . . . as a likely terrorist or traitor" sufficient under this factor), his concerns about allegations that his supposed negligence contributed to the murder weigh in his favor under this factor.

The second factor, which concerns the "risk of retaliatory physical or mental harm" to Plaintiff and to "innocent non-parties," also favors granting the Motion.  See In re Sealed Case,

4

971 F.3d at 326 (internal quotation marks and citation omitted).  Plaintiff fears both physical and mental harm if his name and address are revealed in connection with this litigation.  As to physical harm, Plaintiff contends that he and "those that live with him at home" would be "at risk of harm from the [murder suspect]," who has a "track [record] of violence."  Mot. at 12–15; see id. at 17–18 ("The risk of exposing Plaintiff's name and home address in the context of a homicide where the [suspect] is capable of vicious retaliation is huge."); see also Aff. at 2 ("Plaintiff fears retribution from the patient-assailant if the [suspect], his friends, family members and allies were to discover the name and home address of Plaintiff.").  Specifically, Employee #1 seems to fear that the suspect would come after him for attempting to stop the murder, among other things.  See Mot. at 12–13, 17.  All the more so because the suspect already "assaulted" Employee #1 when he "interrupted [the suspect] in the act of killing a victim."  Id. at 12, 14; see Aff. at 2–3 ("This fear is based on Plaintiff's knowledge of the [suspect]'s crimes of violence in the community, while in custody and an assault on Plaintiff on March 9, 2022.").

      Turning to mental harm, Plaintiff explains that he has already faced "cyber-bullying," which "has been devastating mentally" and has "cause[d] headache, insomnia, poor concentration, apprehension, anxiety, nightmare and fatigue."  Mot. at 9.  If his name and address were disclosed publicly, he fears those "cyber-attacks will become more potent."  Id.; see Aff. at 3.  That fear, he explains, is not speculative; rather, it "is based on the [D]efendants' past conduct" of publishing a report about the murder that implied Plaintiff was partially to blame.  See Aff. at 3.  And it is bolstered by media attention that the St. Elizabeths staff's alleged negligence has already attracted in connection with the murder.  See, e.g., Justin Wm. Moyer, D.C. Hospital Staff Busy on Phones When Patient Was Killed, Advocates Say, Wash. Post (Dec. 23, 2022 at 1:14 PM), https://perma.cc/N998-CS88; Sarah Y. Kim, Report Shows Staff Missed

Multiple Opportunities To Prevent Murder of Patient at St. Elizabeths Hospital, DCist (Dec. 23, 2022, at 1:28 PM), https://perma.cc/6YJX-C2CN.  To be sure, it is possible that "[d]iscovery [will] render his concerns unsupported and unwarranted." Doe v. Fed. Republic of Germany, 2023 WL 4744154, at *3 (D.D.C. July 3, 2023).  At this juncture, however, the Court finds that the allegations in the Complaint and Motion, along with Plaintiff's affidavit, are sufficient to establish that revealing his name and address publicly in connection with this litigation carries a risk of physical and mental harm.

The next two factors cut the other way.  With respect to the third, Plaintiff acknowledges that his case does not implicate the privacy interests of any minors. See Mot. at 20.  As for the fourth, despite the presence of several governmental Defendants who "do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing," Doe v. Cabrera, 307 F.R.D. 1, 8 (D.D.C. 2014) (cleaned up), many of the Defendants are private entities and individuals "who presumably have concerns about their respective reputations." Doe 1 v. George Washington Univ., 369 F. Supp. 3d 49, 67 (D.D.C. 2019).

The fifth and final factor favors granting Plaintiff's Motion.  Defendants would suffer no unfairness if the Motion were granted because Defendants already know Employee #1's identity, and, in any event, Plaintiff has offered to "make any changes or accommodations which the Court may suggest or recommend in the interest of justice," which the Court assumes includes disclosing his name and address under seal. See Mot. at 20; see also In re Sealed Case, 971 F.3d at 326 n.1 (explaining that this factor is "not implicated" where defendant knows plaintiff's identity).  Upon the filing of the pseudonymous Complaint, Defendants will remain free to request any further information they deem necessary to the full and fair defense of the case, and Plaintiff will remain free to object.

In sum, although the third and fourth factors weigh in favor of disclosure, the first, second, and fifth tip the scale toward permitting Plaintiff to proceed under a pseudonym at this early stage.

The Court accordingly ORDERS that:

1. Plaintiff's [4] Motion to Proceed Under Pseudonym is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;

2. All parties shall use the pseudonym listed in the Complaint in all documents filed in this action; and

3. Within fourteen days of this Order, Plaintiff shall file on the public docket:

    i. A pseudonymous version of his [2] Amended Complaint and any attachments;

    ii. A pseudonymous version of his [4] Motion and any attachments; and

    iii. A sealed declaration containing his real name and residential address.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  September 25, 2023