UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMPLOYEE #1,

    *Plaintiff*,

v.

DEPARTMENT OF BEHAVIORAL HEALTH, *et al.*,

    *Defendants.*

No. 23-cv-2553 (DLF)

## MEMORANDUM OPINION

After a patient murdered another patient at St. Elizabeth's Hospital, the hospital fired Employee 1, a psychiatric nurse who first discovered the murder. Employee 1, proceeding pro se and pseudonymously, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and various state common law claims. Employee 1 argues he was terminated based on his sex and national origin and that the defendants defamed him, breached contracts, and committed various torts against him. Before the Court are the defendants' Motions to Dismiss, Dkts. 41, 44, 54.[1] For the reasons that follow, the Court will grant the defendants' motions.

---

[1] The District of Columbia filed a Motion to Dismiss, or in the Alternative for Partial Summary Judgment, Dkt. 44, seeking partial judgment because the plaintiff did not comply with the mandatory notice requirements of D.C. Code § 12-309. At this stage, the Court will not convert the motion to one for partial summary judgment and consider the District's supporting declaration, Dkt. 44-A. Instead, the Court will dismiss the plaintiff's tort claims against the District for unliquidated damages—Counts III and VIII—without prejudice, because the plaintiff failed to allege in his complaint, *see generally* Second Am. Compl, Dkt. 37, or argue in his opposition, *see generally* Opp'n, Dkt. 48, that he gave the required notice.

I.     BACKGROUND

   A.     Factual Background

Employee 1[2] is a Nigerian male who was employed by the D.C. Department of Behavioral Health ("Department") as an RN and then as a psychiatric nurse at St. Elizabeth's Hospital ("St. Elizabeth's") from 2009 until 2022. Second Am. Compl. at 6–7, ¶¶ 1–5, Dkt. 37. On February 11, 2022, St. Elizabeth's staff found a shank made of four plastic spoons wrapped together and shaved down to a point in a patient's room. *Id.* at 8, ¶¶ 4–5. According to the complaint, that patient, identified as Patient #2, had a history of violence and was in pretrial custody at St. Elizabeth's for attacking a homeless man. *Id.* ¶¶ 20, 23. As alleged, St. Elizabeth's failed to warn staff about Patient #2's violent history or the manufactured weapon. *Id.* at 16, ¶ 40. Instead, St. Elizabeth's continued to treat Patient #2 like any other patient. *Id.* ¶¶ 35, 39.

A month later, Employee 1 was working the night shift. *Id.* ¶ 45. At 2:52 a.m., Patient #2 entered the bedroom of another patient, Patient #1, and attacked him. *Id.* ¶¶ 124, 131. Despite checking on Patient #2's room at 3:10 a.m., Employee 1 did not realize Patient #2 was absent. *Id.* ¶¶ 125–26. At around 3:28 a.m., Employee 1 conducted his regular rounds. Only then did he notice Patient #2 standing in Patient #1's room. *Id.* ¶ 132. Upon taking a closer look, Employee 1 realized that Patient #2 was standing with his foot on the prone body of Patient #1. *Id.* ¶ 133. He entered the bedroom, telling Patient #2 to remove his foot. *Id.* ¶ 50. Patient #2 then charged Employee 1 in a "menacing manner," and Employee 1 exited the room and called a "code blue" emergency alert. *Id.* ¶¶ 56, 58. Other St. Elizabeth's staff then responded. *Id.* ¶¶ 62, 65, 76.

---

[2] The plaintiff's motion to proceed pseudonymously was preliminarily granted. Memorandum Op. & Order, Dkt. 5. Since then, none of the defendants have filed a motion to unseal the plaintiff's identity. This Court declines to do so *sua sponte* and refers to the plaintiff as Employee 1.

After investigating the incident, the Department and St. Elizabeth's terminated Employee 1. *Id.* ¶ 147. University Legal Services, a non-profit group that conducts investigations related to individuals with disabilities, published a report summarizing the incident and identifying preventative measures that could be implemented. *Id.* at 7, ¶ 12; *id* at 40 ¶ 175; ULS Mot. to Dismiss at 2, Dkt. 54.

### B. Procedural Background

Employee 1 brought this lawsuit, alleging Title VII employment discrimination and state common law tort claims against almost twenty defendants, including the Department of Behavioral Health, St. Elizabeth's, and a number of their employees. Am. Compl., Dkt. 7. Because many of the defendants were government employees sued in their official capacity, Employee 1 moved to file an amended complaint substituting those defendants for the District of Columbia. Mot. to Substitute, Dkt. 34. He filed the operative complaint on January 12, 2024. *See* Second Am. Compl. In that complaint, he pursued claims against four defendants: the director of the Department, Barbara Bazron, in her individual capacity; the CEO of St. Elizabeth's, Mark Chastang, in his individual capacity; the District of Columbia; and University Legal Services. *Id*. The complaint alleges eight claims: (I) national origin discrimination; (II) sex discrimination; (III) assault; (IV) negligent infliction of emotional distress; (V) defamation; (VI) breach of contract; (VII) denial of benefits; and (VIII) failure to supervise. *Id.* The defendants filed motions to dismiss in February, March, and September of 2024. *See* Dkts. 41, 44, 54. This case was transferred to the undersigned on July 9, 2024.

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited, *id.*; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624

(D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

### III.  ANALYSIS

The defendants move to dismiss the complaint on various grounds. The government defendants argue that the complaint fails to plead facts sufficient to support Employee I's eight claims and that the claims are also precluded by the Comprehensive Merit Personnel Act, the D.C. Code administrative scheme for adjudicating government-employee disputes. The District raises an additional bar to certain claims: that Employee 1 failed to give notice of his unliquidated tort claims pursuant to D.C. Code § 12-309. *See Blocker-Burnette v. District of Columbia*, 730 F. Supp. 2d 200, 203 (D.D.C. 2010). This Court first will consider whether Employee 1 needed to exhaust his administrative remedies or provide notice before turning to the other bases to dismiss the remaining claims.

### A.  Comprehensive Merit Personnel Act

In the District of Columbia, the Comprehensive Merit Personnel Act ("CMPA") provides recourse for employee grievances raised over work-related matters. *See generally* D.C. Code §§ 1-601 *et seq.* This comprehensive administrative scheme is, with a few exceptions, the exclusive avenue for a government employee to bring work-related complaints. *See Baker v. District of Columbia*, 785 A.2d 696, 697–98 (D.C. 2001); *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 37 (D.D.C. 2005); *see also* 6 DCMR § 1626. A grievance encompasses any personnel or disciplinary action taken by the District which "impairs or adversely affects the interest, concern, or welfare of employees." D.C. Code § 1-603.01(10); *see District of Columbia v. Thompson*, 593 A.2d 621, 624 (D.C. 1991). An aggrieved employee subject to this type of action must exhaust his claims within the administrative system, and may only turn to the courts as a "last resort."

5

*Armstead v. District of Columbia*, 810 A.2d 398, 400 (D.C. 2002); *see* D.C. Code § 1-616.53. Courts should dismiss claims if there is even a "substantial question" on whether the CMPA applies. *Johnson*, 368 F. Supp. 2d. at 48. The District, Bazron, and Chastang argue that Employee 1's claims are barred because he did not follow CMPA exhaustion procedures. D.C. Mot. to Dismiss at 4, Dkt. 44; Bazron & Chastang Mots. to Dismiss at 4, Dkt. 41. The Court agrees as to some, but not all, counts.

Employee 1's claims for negligent infliction of emotional distress (Count IV), defamation (Count V), breach of contract (Count VI), and denial of benefits (Count VII) raise a substantial question on whether they are covered by the CMPA. Count IV alleges the defendants negligently inflicted emotional distress by publicizing "false statements and allegations" against him, causing him further trauma. Second Am. Compl., at 62, ¶ 111. But those allegedly false statements were made to defend the hospital's decision to fire Employee 1—the exact type of personnel decision that is covered by CMPA. *See Johnson*, 368 F. Supp. 2d at 46; *Thompson*, 593 A.2d at 635. Similarly, Employee 1's defamation claim (Count V) disputes St. Elizabeth's description of his conduct the night of the incident. Defamation claims regarding a "work related complaint" must go through the CMPA procedure. *Baker*, 785 A.2d at 698. Finally, this Court will construe both Counts VI and VII as raising breach of contract claims. *See generally* Second Am. Compl. at 70–73. In Count VI, Employee 1 alleges that Bazron promised to provide him workplace resources to address his trauma, resources he never received because he was fired. *Id.* at 71, ¶¶ 140, 142. Similarly, Count VII alleges that St. Elizabeth's made promises to re-train its employees. But because Employee 1 was terminated, he never received the promised training. *Id.* at 72, ¶¶ 145, 147. Both allegations relate directly to personnel decisions covered by the CMPA—training, workplace resources, and termination. *Cf. Johnson*, 368 F. Supp. 2d at 43–44 (finding alleged

failure of employer to follow its own disciplinary rules needed CMPA exhaustion); *White v. District of Columbia*, 852 A.2d 922, 925–26 (D.C. 2004) (concluding fraudulent misrepresentation claims must follow CMPA procedure).  Because a "substantial question" exists as to whether Counts IV, V, VI, and VII are covered by the CMPA, Employee 1 was required to exhaust his administrative remedies before seeking judicial relief.  *Johnson*, 368 F. Supp. 2d. at 48.  The Court will therefore dismiss Counts IV, V, VI, and VII against the District, Bazron, and Chastang for failure to exhaust.

By contrast, the remaining four counts—assault, failure to supervise, and employment discrimination—fall outside the CMPA's processes.  The CMPA only covers grievances on specific issues: performance evaluations and disciplinary actions.  *See Thompson*, 593 A.2d at 624.  Any employee grievances that do not relate to discipline do not go through CMPA procedures.  *See* D.C. Human Rights, *Grievance Processing*, at edpm.dc.gov/issuances/grievance-processing (accessed September 5, 2024) (classifying the types of actionable grievances).[3]  As relevant here, Employee 1's assault claim (Count III) and failure to supervise claim (Count VIII) relate to the dangerous conditions of his employment, not disciplinary actions.  Thus, they are not precluded by the CMPA.  *See Stockard v. Moss,* 706 A.2d 561, 565 n.7 (D.C. 1997) (assault not covered by the CMPA).  Likewise, Employee 1's discrimination allegations (Counts I and II) are not covered by the CMPA.  Even though they do relate to his termination, the CMPA excludes discrimination

---

[3] The District's website for processing grievances under the CMPA also confirms that grievances only apply to discipline and other personnel decisions. Although the parties do not reference this in their briefs, the Court will take judicial notice of this fact because the accuracy of the information on the District's official website "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Herron v. Fannie Mae*, No. 10-cv-00943 (RMC), 2012 WL 13042852 (D.D.C. Mar. 28, 2012) (taking judicial notice of "certain public records of federal agencies that are available on the agencies' websites"); *Hamilton v. Paulson*, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008) (holding judicial notice may be taken of public records and government documents available from reliable sources on the internet), *rev'd on other grounds*, 666 F.3d 1344 (D.C. Cir. 2012).

issues. *See King v. Kidd*, 640 A.2d 656, 664 & n.9 (D.C. 1993). Counts I, II, III, and VIII therefore do not fall under the CMPA and do not need to be exhausted.

**B.     Notice**

Ordinarily, sovereigns, including the District of Columbia, are not liable to suit. But a sovereign may choose to waive its sovereign immunity subject to notice requirements. *See Faison v. District of Columbia,* 664 F. Supp. 2d 59, 68 (D.D.C. 2009). Relevant here, D.C. Code § 12–309 prescribes notice requirements that potential plaintiffs must follow before bringing tort claims for "unliquidated damages" against the District. "A debt is liquidated if at the time it arose, it was an easily ascertainable sum certain." *District of Columbia v. Campbell*, 580 A.2d 1295, 1300 (D.C. 1990) (cleaned up). If the damages are not easily ascertainable, plaintiffs must give written notice to the mayor of the "time, place, cause, and circumstances" of the event within six months of the injury. D.C. Code § 12-309. These requirements must be "strictly construe[d]." *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 158 (D.D.C. 2002). Employee 1 does not allege in his complaint that he gave notice to the mayor. He also does not address this issue in his opposition to the defendants' motion to dismiss. *See generally* Opp'n, Dkt. 48. Thus, Employee 1's tort claims for unliquidated damages cannot go forward against the District.

It remains to determine which claims, if any, are for unliquidated damages. Some of the requested forms of relief fall outside of the notice requirement, such as Employee 1's demand for backpay and non-pecuniary equitable relief, and may therefore proceed. *See Elzeneiny v. District of Columbia*, 699 F. Supp. 2d 31, 35 (D.D.C. 2010) (prayers for equitable relief, such as reinstatement or promotion, are not subject to the notice requirement). Counts I and II fall under a federal statute and therefore state notice requirements do not apply. *See infra* §§ III.C.1, III.D.1. But Counts III and VIII, which allege tort claims for assault and negligence, are subject to D.C.'s

8

notice requirements. The damages for both alleged torts stem from a harm that is not easily quantifiable: "trauma" from the incident. Second Am. Compl. at 76; *see* Opp'n at 52. Because Counts III and VIII bring tort claims against the district for unliquidated damages, and Employee 1 has not established that he provided notice, they cannot proceed against the District.

The remaining Title VII and common law claims are Counts I and II (Title VII) against the District; Count III (Assault) against Bazron and Chastang; Count V (Defamation) against University Legal Services; and Count VIII (Failure to Supervise) against Bazron and Chastang. The Court will address each in turn.

### C. Count I: National Origin Discrimination

#### 1. *Exhaustion*

A federal employee bringing claims under Title VII must timely exhaust administrative remedies before filing suit in federal district court. *See Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 33 (D.C. Cir. 2014); *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012); *see also* 29 U.S.C. § 794a(a)(1). An employee does so by first filing a claim with the Equal Employment Opportunity Commission. *See generally* 42 U.S.C. § 2000e-5. If the EEOC declines to pursue the claim, it will notify the plaintiff and grant the plaintiff the right to sue. *Id.* § 2000e-5(f)(1). A plaintiff has ninety days from receiving notice of his right to sue to commence a Title VII suit in court. *See Dougherty v. Barry*, 869 F.2d 605, 609 (D.C. Cir. 1989).

The EEOC issued a right to sue letter on May 12, 2023. EEOC Letter, Dkt. 48-1; *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011) ("A court may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for summary judgment."). Employee 1 filed this suit ninety-four days later, on August 14, 2023. Compl., Dkt. 1. According to the defendants, that makes his claims untimely. Reply at 2, Dkt. 49. But the

operative date for determining timeliness is when the plaintiff *received* the letter, not when the EEOC issued it.  Employee 1 does not clearly allege when he received the EEOC's letter.[4]  But "the presumptive day of receipt is three-to-five days after issuance and mailing."  *Maggio v. Wisconsin Ave. Psychiatric Ctr., Inc.*, 795 F.3d 57, 59 n.1 (D.C. Cir. 2015).  Adding that to the calculus means Employee 1's filing fell within the 90-day period.  His claims are therefore timely.

### 2. *Failure to State a Claim*

As an initial matter, it is unclear from the complaint which defendants Employee 1 includes in this claim.  Bazron, Chastang, and the District assume they are all included.  *See* Bazron Mot. to Dismiss at 7; D.C. Mot. to Dismiss at 6–7.  But Employee 1 sued Bazron and Chastang in their individual capacities only.  "Title VII does not impose liability on individuals in their personal capacities."  *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 135 (D.D.C. 2016); *see also Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).  Thus, this Court will consider allegations in Count One against the District only.

Employee 1 alleges St. Elizabeth's and the Department discriminated against him on the basis of national origin by firing him.  To prevail on a Title VII discrimination claim, a plaintiff must show (1) he is a member of the protected class; (2) he suffered an adverse employment action; and (3) that action was due to his protected status.  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).  The only disputed element is the third one.  To show discrimination, Employee 1 points out that other American employees were also working that night but were not terminated.  Second Am. Compl. at 47, ¶ 21.  But beyond conclusory assertions that his disparate treatment was because of his national origin, Employee 1 offers no factual allegations that support his bald

---

[4] He attaches a Notice from the EEOC dated May 20, 2023.  Although it's possible that is the date he first received notice, Employee 1 does not clearly state as much.  The Court will therefore treat the date of receipt as unknown.

assertion of discrimination. Indeed, Employee 1 admits he visited Patient #2's room shortly after the attack occurred yet did not notice Patient #2 had left his room. Second Am. Compl., ¶¶ 125–26. This oversight on the night of the incident, coupled with his responsibility as the first nurse to arrive, allows a plausible inference that he was not terminated for national origin discrimination. Absent more, Employee 1 has failed to allege a claim of national origin discrimination under Title VII against the District. Accordingly, the claim will be dismissed under Rule 12(b)(6).

### D. Count II: Gender Discrimination

#### 1. *Exhaustion*

As discussed previously, federal employees bringing suit under Title VII must timely exhaust administrative remedies. *See infra*, § III.B.1. The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up). It limits the scope of an employee's complaint in federal court "to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Id.* (citation omitted). A claim is "reasonably related" to an EEOC charge if "[a]t a minimum," the claim would "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526–27 (D.C. Cir. 2019) (internal quotation marks and citation omitted).

When Employee 1 filed his charge with the EEOC, he listed national origin but did not mention sex discrimination as a basis for his discrimination claim. EEOC Charge at 3, Dkt. 48-1. He also failed to include any factual allegations related to his sex, nor did he claim that defendants' conduct was motivated by his sex. *Id.* A plaintiff who includes in his complaint "allegations outside the ambit of the predicate EEOC charge" fails to exhaust his administrative remedies "as

11

surely as would an initial failure to file a timely EEOC charge." *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997); *see also Haynes v. DC Water Is Life*, 271 F. Supp. 3d 142, 154–56 (D.D.C. 2017) (finding failure to exhaust race and age discrimination claims where EEOC charge only mentioned disability discrimination), *aff'd sub nom. Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519 (D.C. Cir. 2019).  Employee 1 failed to exhaust his sex discrimination claim, and thus the Court will dismiss the claim with prejudice under Rule 12(b)(6).  *See Charles v. District of Columbia*, 164 F. Supp. 3d 98, 103 n.6 (D.D.C. 2016).

### E. Count III: Assault

Employee 1 alleges Patient #2 assaulted him by lunging towards him in a menacing manner.  Second Am. Compl. at 56, ¶ 72.  Assault "occurs when one person (a) 'acts intending to cause a harmful or offensive contact with the person of the other . . ., or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.'" *Stansell v. Cuba*, 217 F. Supp. 3d 320, 343 (D.D.C. 2016) (quoting Restatement (Second) of Torts § 21(1)).  Employee 1 pleads facts supporting the allegation that Patient #2 committed assault against him.  But Patient #2 is not a party to this suit.  And "[a]s a general rule, a private person does not have a duty to protect another from a criminal attack by a third person." *Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 481 (D.C. Cir. 1970).  Although the District may be held vicariously liable for the actions of its employees acting within the scope of their employment, *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007), that exception does not apply here.  Patient #2 was not an employee, and he was not acting to further the District's purposes.  In any event, as discussed above, Employee 1 has not established he complied with notice requirements regarding the alleged assault.  *See supra* § III.B.  Although Bazron and Chastang are employees of the District, Employee 1 does not mention them in Count III of his complaint, much

less explain how they contributed to the assault. Thus, Employee 1 fails to state a claim for assault against any of the defendants.

### F. Count V: Conspiracy to Defame and Defamation of Character

In addition to bringing this claim against the government defendants, Employee 1 alleges that University Legal Services—a private entity not subject to the CMPA—conspired and acted to defame him by publishing the investigation report on the incident. Second Am. Compl., at 63–70. The Court will dismiss this count also because Employee 1 fails to plead facts sufficient to support his claims of defamation and conspiracy to defame.

#### 1. *Defamation*

To state a claim for defamation, a plaintiff must sufficiently allege: (1) "that the defendant made a false and defamatory statement concerning the plaintiff"; (2) "that the defendant published the statement without privilege to a third party"; (3) "that the defendant's fault in publishing the statement amounted to at least negligence"; and (4) "either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999) (quoting *Crowley v. N. Am. Telecomm. Ass'n*, 691 A.2d 1169, 1172 n.2 (D.C. 1997)). At a minimum, Employee 1 has not met the fourth prong.

First, only "statements about extreme subjects, such as criminal behavior, serious sexual misconduct, a loathsome disease, or a person's suitability for his chosen profession," are considered per se defamatory. *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (cleaned up). Employee 1 claims that the report painted him as "callous and indifferent" which was to his "detriment." Second Am. Compl. at 65, ¶¶ 122–23. Although no individual wants to be portrayed as callous, a reputational slight is not enough to serve as a defamatory statement. *Franklin v.*

13

*Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012).  Employee 1 does not suggest that the report made any direct statements attacking his ability to serve as a psychiatric nurse.  Nor does he allege any other statement that rises to the level of per se defamation.

Second, Employee 1 also fails to establish special harm.  To show special harm, a plaintiff must plead "actual pecuniary loss" resulting from the defamation.  *Conejo v. Am. Fed'n of Gov't Emps.*, 377 F. Supp. 3d 16, 32 (D.D.C. 2019) (citing *FAA v. Cooper*, 566 U.S. 284, 295 (2012)).  Although Employee 1 does list certain financial injuries, such as loss of income and retirement contributions, he does not allege that those pecuniary harms stemmed from University Legal Services's defamation.  Indeed, its report postdated his termination, so there is no way any defamatory statement caused him to lose his job.  Second Am. Compl. at 7, ¶ 5 (fired 9/2022); *id.* at 64, ¶ 117 (report published 12/2022).  Employee 1 thus does not allege pecuniary loss resulting from defamation.

In sum, Employee 1 has not pleaded with specificity sufficient facts to support per se defamation or special harm resulting from ULS's allegedly defamatory statements.

        2.    *Conspiracy*

In order to plead a conspiracy claim, a plaintiff must allege facts sufficient to support a claim for the underlying act.  *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009).  Because Employee 1 has failed to plead facts supporting defamation, the Court will also dismiss his conspiracy claim.

    **G.    Count VIII: Failure to Supervise**

Employee 1 alleges that the failure of District, Bazron, and Chastang to supervise patients at the hospital proximately caused the fatal incident.  Second Am. Compl. at 73, ¶ 150–51.  The Court will interpret this as a negligence claim.  As already discussed, Employee 1 failed to allege

that he followed the notice requirements under D.C. Code § 12-309. *See supra*, § III.B. In addition, although he incorporates paragraphs 1 through 304 into Count VIII, it is unclear whether he brings this claim against Bazron and Chastang in their individual capacities. To the extent he intended to bring a negligence claim against these defendants, he has failed to plead facts sufficient to support such a claim. To plead a negligence claim, Employee 1 must allege facts sufficient to show that Bazron and Chastang (1) owed him a duty; (2) breached that duty; and that (3) the breach was the proximate cause of (4) his damages. *See Jolevare v. Alpha Kappa Alpha Sorority, Inc.*, 521 F. Supp. 2d 1, 14 (D.D.C. 2007). Employee 1's complaint falls short because it does not allege what duty Bazron and Chastang owed to him personally, nor does it explain how they breached any such duty. General allegations that hospital residents were not properly supervised, *see, e.g.*, Sec. Am. Compl., Dkt. 37 at 73, are insufficient to state a negligence claim against Bazron and Chastang. Employee 1 must provide specific details about the defendants' duties, rather than mere "conclusory statements." *Iqbal*, 556 U.S. at 678. Because he has not done so, the Court will dismiss Count VIII without prejudice.

**CONCLUSION**

For the foregoing reasons, the defendants' Motions to Dismiss, Dkts. 41, 44, 54, are GRANTED. Counts II, IV, V, VI, and VII are dismissed with prejudice under Rule 12(b)(6) for failure to exhaust. Counts I, III, and VIII are dismissed without prejudice under Rule 12(b)(6). A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 29, 2024